UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

MRAD Phase II, LLC

Case No. 6:26-bk-07959-TPG
Chapter 11

Debtor.
___________________________________/

**DEBTOR'S EMERGENCY MOTION TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING**

The Debtor, MRAD Phase II, LLC, by and through its proposed undersigned counsel, and pursuant to 11 U.S.C. §§ 361 and 363(c)(2)(B) and Federal Rules of Bankruptcy Procedure 4001 and 9014, hereby moves the Court for an order authorizing the use of cash collateral in the form attached hereto as **Exhibit A** and requests an emergency preliminary hearing on the relief sought herein, and in support thereof states as follows:

Preliminary Statement – Certificate of Need for Emergency Relief

1. If Debtor does not receive immediate relief, then Debtor will not have funds to operate or pay expenses, thereby resulting in immediate and irreparable harm to the value of the Debtor's business. The Debtor is attempting to obtain the consent of creditors with an interest in cash collateral; however, Debtor is uncertain if such consent can be obtained on an expedited basis. The request for this emergency hearing is not the result of the Debtor's or counsel's procrastination or lack of attention. Debtor requests a hearing as soon as possible as many of Debtor's obligations come due in the ordinary course of the Debtor's business. Debtor estimates that a preliminary hearing of this Motion will require approximately fifteen (15) minutes.

2. The Debtor requests that the Court conduct the emergency preliminary hearing on or before Thursday, October 15, 2026. Proposed counsel for the Debtor, Jonathan Sykes and Melissa Youngman, both have previously scheduled hearings in other matters on the morning of

Thursday, October 15, 2026. Accordingly, the Debtor respectfully requests that the Court schedule the preliminary hearing for the afternoon of Thursday, October 15, 2026 if possible.

Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Background

5. On October 12, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

6. The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

Description of the Debtor's Business, Creditors, and Cash Collateral

7. The Debtor is a Delaware limited liability company, originally organized as a Florida limited liability company, that owns and operates a 264-unit Class A multifamily apartment community known as Summer House at Lake Apopka, located on Marden Road in Apopka, Orange County, Florida (the "Property"). The Debtor's business office is located at 1250 Marden Road, Suite 1, Apopka, FL 32703.

8. The Property was constructed approximately two years ago and is covered by a seven-year latent defect warranty. The Property is a fully operational, income-producing community that remains leased and occupied, with an occupancy rate of approximately ninety percent (90%) and a leased rate of approximately ninety-five percent (95%). The Debtor's revenue is derived from tenant rents, which the Debtor uses to pay the Property's operating expenses, including payroll, utilities, maintenance, insurance, real estate taxes, and vendors.

9. The Debtor's construction and permanent financing was provided pursuant to a Construction Loan Agreement dated March 18, 2022, among the Debtor, The Huntington National Bank, as individual lender and administrative agent, and Premier Bank, in the maximum principal amount of $44,325,000.00, evidenced by two Amended & Restated Promissory Notes in the amounts of $25,000,000.00 and $19,325,000.00 and secured by a mortgage on the Property and an assignment of leases and rents (the "Loan").

10. Events Leading to the Chapter 11 Filing. The Loan was amended twice. The Second Amendment, effective October 1, 2025, extended the maturity date of the Loan to January 5, 2026, in connection with a contemplated refinancing of the Loan by OWS Real Estate Finance, LLC, from which the Debtor had obtained a refinancing commitment. The refinancing did not close before the January 5, 2026 maturity date.

11. On February 13, 2026, Huntington issued a demand letter giving the Debtor ten days, until February 23, 2026, to pay the entire alleged balance of approximately $46.37 million. Two days after the demand period expired, on February 25, 2026, Huntington filed a Verified Complaint for Foreclosure and Appointment of Receiver against the Debtor and others in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2026-CA-002105-O (the "State Court Action"), seeking foreclosure of the Property, turnover of rents, and appointment of a receiver. The Debtor disputes Huntington's claims, including the amount allegedly owed and whether Huntington complied with the notice-and-cure provisions of the loan documents.

12. In the State Court Action, Huntington has aggressively pursued the appointment of a receiver over the Property and its rents, including through an evidentiary hearing held on May 18, 2026 and multiple emergency supplements, and moved for summary judgment. At a hearing

held on October 7, 2026, the state court granted Huntington's motion for summary judgment and its motion to appoint a receiver; however, as of the Petition Date, orders on those motions had not been entered. In addition, the Debtor's parent company, Nied Ownership LLC, filed a Chapter 11 case in this Court on May 1, 2026 (Case No. 6:26-bk-03232-TPG), which was dismissed on August 27, 2026, permitting a creditor of the parent, ACRE CFPORTFOLIO LLC, to resume a UCC Article 9 foreclosure sale of the equity interests in Nied Member, LLC, the entity that indirectly owns the Debtor. Affiliates of the Debtor are also defendants in other foreclosure and guaranty actions brought by Huntington, American Momentum Bank, and Colliers Funding LLC.

13. Faced with the imminent appointment of a receiver, the potential entry of a foreclosure judgment, and uncertainty regarding control of its ultimate parent, the Debtor filed this Chapter 11 case to preserve the going concern value of the Property for the benefit of all creditors, to stabilize operations, and to pursue a refinancing or plan of reorganization that will pay its secured debt in full from the substantial equity in the Property.

14. Subject to defenses and offsets, The Huntington National Bank ("Huntington Bank"), individually and as administrative agent, may assert a claim secured by the Property and the Debtor's cash collateral, including rents, pursuant to the mortgage and assignment of leases and rents. Huntington Bank has asserted that approximately $48,342,957.44 was owed as of July 24, 2026, which amount the Debtor disputes.

15. Huntington Bank is substantially oversecured. In the State Court Action, Huntington Bank and the Debtor jointly stipulated that the value of the Property is approximately twice the value of the indebtedness owed to Huntington Bank. This substantial equity cushion, together with the replacement liens and other protections offered herein, adequately protects Huntington Bank's interest in the cash collateral.

16. The cash collateral the Debtor seeks to use is comprised of cash on hand and rental revenue to be received post-petition from the Debtor's tenants.

17. As of the Petition Date, the Debtor estimates the value of its cash collateral, consisting of cash on hand, is approximately $624,525.25 and the value of its accounts receivable is approximately $297,957.61.

Relief Requested and Adequate Protection

18. The Debtor will require the use of cash collateral to continue to operate its business.

19. The Debtor will use cash collateral to make payroll, pay utilities, suppliers and vendors, and pay other ordinary course expenses to maintain its business.

20. The Debtor is preparing a twelve-week budget (the "Budget") showing estimated income and expenses for the Debtor's business, which will be filed as **Exhibit B** prior to the preliminary hearing.

21. Debtor projects that the business can be operated on a profitable basis such that in the ordinary course of business more cash collateral will be generated than used. Use of the cash collateral provides Debtor with a reasonable opportunity for reorganization under chapter 11 which will maximize the value of its assets.

22. The interests of the creditor will, to the extent its lien attaches post-petition, be adequately protected by: (i) a replacement lien; (ii) standard reporting requirements; (iii) continued maintenance and insurance of the Debtor's assets; (iv) the substantial equity cushion in the Property, which Huntington Bank has stipulated is worth approximately twice its indebtedness; and (v) increased value of the Debtor's assets as a result of reorganization.

23. If the Debtor is not permitted to use cash collateral, it will be forced to halt operations, which will result in the loss of the going concern value of the business, the inability of

the Debtor to continue operating, and the frustration of Debtor's efforts to reorganize. Accordingly, the Debtor alleges that granting the use of cash collateral and allowing it a chance to reorganize is the best way to maximize the position of Huntington Bank and all other creditors.

Basis for Relief

24. Section 363(c)(2) provides that a debtor in possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the Court approves the use.

25. Section 363(p) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor-in-possession has the burden of proof on the issue of adequate protection.

26. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 15 days after service of the motion but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

27. Section 361 of the Bankruptcy Code provides examples of adequate protection, which include "replacement liens," "periodic cash payments," and other measures which provide an "indubitable equivalent." 11 U.S.C. § 361(1) - (3). The focus of adequate protection is to protect the secured creditor from any decline in value of its collateral during the bankruptcy period.

28. As stated above, Debtor is providing multiple forms of adequate protection for the creditor and is therefore entitled to use cash collateral.

29. Additionally, the Bankruptcy Code provides for methods under which counsel may obtain interim compensation during the pendency of a case. 11 U.S.C. § 361.

30. Nothing contained herein is intended or should be construed as: (a) an admission

as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to Section 365.

WHEREFORE, the Debtor respectfully requests entry of an order, in the form attached hereto as **Exhibit A**, authorizing the continued use of cash collateral, setting an emergency preliminary hearing on Wednesday, October 14, 2026, or the afternoon of Thursday, October 15, 2026, and granting such other and further relief as is just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 13, 2026 a true and correct copy of the foregoing has been furnished by first class United States mail, postage prepaid to: The Huntington National Bank, Attn: Stephen D. Steinour, President, 41 South High Street, Columbus, OH 43287.

Dated: October 13, 2026

Respectfully submitted,

/s/ *Jonathan Sykes*

Jonathan Sykes, Esq.
Florida Bar Number: 73176
Melissa Youngman, Esq.
Florida Bar Number: 0690473
**NARDELLA & NARDELLA, PLLC**
135 West Central Blvd., Suite 300
Orlando, Florida 32801
Office: (407) 966-2680
Fax: (407) 966-2681
Primary Email: jsykes@nardellalaw.com
Secondary Email: myoungman@nardellalaw.com
kfoley@nardellalaw.com

*PROPOSED COUNSEL TO DEBTOR*

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

MRAD Phase II, LLC,

Debtor.
___________________________________/

Case No. 6:26-bk-07959
Capter 11

**FIRST INTERIM ORDER GRANTING DEBTOR'S MOTION TO USE CASH COLLATERAL AND NOTICE OF CONTINUED HEARING ON ____, 2026**

**THIS CASE** came on for an emergency preliminary hearing on ___, 2026 (the "Hearing") upon the Emergency Motion to Use Cash Collateral filed by MRAD Phase II, LLC (the "Debtor"), filed on October 12, 2026 (Doc. No. __) (the "Motion"). The Motion seeks authority to use cash collateral and to provide adequate protection to Huntington Bank on an interim basis. Upon consideration of the Motion, the evidence presented, and the positions of the parties at the Hearing, it is

**ORDERED:**

1. Interim Authorization Granted. The Motion is **GRANTED** on an interim basis through and including ----, 2026 as provided herein, subject to the right of any party in interest to petition the Court for reconsideration of this Order at any time prior to the confirmation of any plan of reorganization of the Debtor.

2. Cash Collateral Authorization. Subject to the provisions of this order, the Debtor is authorized to use cash collateral to pay: (a) amounts expressly authorized by this Court, including quarterly fees payable to the United States Trustee; (b) the current and necessary

expenses set forth in the budget attached to the Motion as **Exhibit B** (the "Budget"), plus up to ten percent (10%) for each line item (provided no amount shall be disbursed for pre-petition sales tax, absent proper application and entry of an order by the Court); and (c) such additional amounts as may be expressly approved in writing by the Creditors, to the extent such Creditor has an interest in such cash collateral. This authorization will continue until the effective date of any confirmed plan of reorganization of the Debtor, or until further order of this Court. Except as authorized in this order, the Debtor is prohibited from use of cash collateral.

3. Debtor Obligations. The Debtor shall timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

4. Replacement Liens. The Creditors shall have a perfected post-petition lien against cash collateral to the same extent and with the same validity and priority as its respective prepetition liens, without the need to file or execute any document as may otherwise be required under applicable nonbankruptcy law.

5. Insurance. The Debtor shall maintain all its insurances including liability and casualty insurance coverage in accordance with state law and its obligations under the agreements with its Creditors.

6. Without Prejudice. This Order is without prejudice to: (a) any subsequent request by a party-in-interest for modified adequate protection or restrictions on use of cash collateral; or (b) any other right or remedy which may be available to the Creditors.

7. Creditors Committee. The provisions of this Order are without prejudice to the rights of the United States Trustee to appoint a committee or any rights of a duly appointed

committee to challenge the validity, priority, or extent of any lien(s) asserted against cash collateral.

8. Enforcement. The Court shall retain jurisdiction to enforce the terms of this Order.

9. Continued Hearing. The hearing on this Motion is continued to _________ ___, 2026, at ______ a.m./p.m.

####

Attorney Jonathan Sykes is directed to serve a copy of this order on interested parties who are non-CM/ECF users parties and file a proof of service within 3 days of entry of the order.

**Exhibit B**

Budget Through November 2026